UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARYL ROGERS,

                Petitioner,

v.

RONALD HAYNES,

                Respondent.

Case No. C22-5367-LK-SKV

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Daryl Rogers is a Washington prisoner who is currently confined at the Stafford Creek Corrections Center in Aberdeen, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2019 Clark County Superior Court judgment and sentence. *See* Dkt. 4. Respondent has filed an answer responding to Petitioner's federal habeas claims and has submitted relevant portions of the state court record. Dkts. 7, 8. Petitioner has filed a response to Respondent's answer. Dkt. 12. This Court, having carefully reviewed Petitioner's petition for writ of habeas corpus, all briefing of the parties, and the state court record, concludes that the petition should be denied, and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II. FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's conviction as follows:

> When J.O. was a young girl, her family became close with Daryl Rogers and his family and even had Thanksgiving together one year. J.O.'s mother and stepfather hired him to babysit several times when they went out. J.O.'s mother remained in contact with Rogers even after fleeing to Alaska with her children to escape her abusive husband. After her husband learned her whereabouts and began sending people to her door, J.O.'s mother and her children returned to Washington and moved into Rogers' house. They lived in his house for two or three months before moving out due to a dispute about rent.
>
> Years later, when J.O. was 16, she revealed that Rogers had raped and molested her. J.O. resisted going to the police, but, two weeks later, her mother convinced her. The State charged Rogers with three counts of first degree rape of a child and three counts of first degree child molestation. During trial, J.O. testified, as did two medical providers who had treated her, a mental health counselor and a pediatrician. The providers testified about their observations and provided general background information within their fields of expertise. Rogers testified in his own defense and called several additional witnesses. The jury convicted him on three counts of first degree rape of a child, first degree child molestation, and was unable to reach a verdict on the remaining charges.

Dkt. 8, Ex. 2 at 2-3.

## III. PROCEDURAL BACKGROUND

On January 23, 2019, Petitioner was sentenced on the three counts of rape of a child to a minimum term of 277 months confinement and a maximum term of life, and he was sentenced on the one count of child molestation to a concurrent minimum term of 177 months confinement and a maximum term of life. Dkt. 8, Ex. 1 at 5-6.

Petitioner appealed his judgment and sentence to the Washington Court of Appeals. *See* Dkt. 8, Exs. 3, 4, 5. Among the issues argued by Petitioner on direct appeal was that he was denied his constitutional right to a fair trial by an impartial jury when the trial court failed to *sua sponte* dismiss a juror after the juror expressed actual bias during *voir dire*. *Id.*, Ex. 3 at 14-20.

REPORT AND RECOMMENDATION
PAGE - 2

On August 3, 2020, the Court of Appeals issued an unpublished opinion affirming Petitioner's conviction but remanding the matter to the trial court to strike an improper condition of community custody. *Id*., Ex. 2. Petitioner sought review by the Washington Supreme Court, and the Supreme Court denied review without comment on March 3, 2021. *See id*., Exs. 6, 7. The Court of Appeals issued its mandate terminating direct review on April 19, 2021. *Id*., Ex. 8.

On October 23, 2020, Petitioner filed a motion for arrest of judgment pursuant to Washington Superior Court Criminal Rule (CrR) 7.4 in the Clark County Superior Court. Dkt. 8, Ex. 9. Petitioner asserted therein that the trial court's imposition of a maximum term of life imprisonment violated his Sixth Amendment right to a jury trial. *See id*. The Superior Court construed the motion as one made pursuant to CrR 7.8 and transferred it to the Washington Court of Appeals for consideration as a personal restraint petition. *Id*. On May 10, 2021, following additional briefing by the parties, the Court of Appeals issued an order dismissing the petition based upon Petitioner's failure to establish any grounds for relief from restraint. *See id*., Exs. 10, 11, 12.

Petitioner sought further review in the Washington Supreme Court, and on September 29, 2021, a Deputy Commissioner of the Supreme Court issued a ruling denying review. Dkt. 8, Exs. 13, 14. Petitioner moved to modify the Commissioner's ruling, and that motion was denied on January 5, 2022. *Id*., Exs. 15, 16. The Court of Appeals issued a certificate of finality in Petitioner's personal restraint proceedings on January 13, 2022. *Id*., Ex. 17.

Petitioner submitted his federal habeas petition to this Court for filing on May 20, 2022. Dkt. 1. The briefing is now complete, and this matter is ripe for review.

REPORT AND RECOMMENDATION
PAGE - 3

## IV.   GROUNDS FOR RELIEF

Petitioner identifies the following two grounds for relief in his petition for writ of habeas corpus:

> **Ground One:** Rogers was sentenced under RCW 9.94A.507, a sentence enhancement that was not charged, decided by the jury, or admitted to by Rogers, in violation of the Sixth Amendment, *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856 (2007), and *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 2162, 186 L. Ed. 2d 314 (2013).
>
> **Ground Two:** Rogers' Sixth Amendment right to trial by a fair and impartial jury was violated because the court erred in failing to excuse a juror for cause.

*See* Dkt. 4 at 6.

## V.   DISCUSSION

Respondent asserts that Petitioner arguably exhausted his two grounds for federal habeas relief. Dkt. 7 at 4. Respondent argues, however, that Petitioner is not entitled to relief with respect to either of his claims because the state courts did not unreasonably resolve the claims contrary to United States Supreme Court precedent. *See id.* at 9-15.

### A.   Federal Habeas Standard, 28 U.S.C. § 2254

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id*. at 71. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the

REPORT AND RECOMMENDATION
PAGE - 5

evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

**B.     Analysis**

   *1.     Exceptional Sentence*

Petitioner asserts in his first ground for relief that the sentence imposed by the trial court violated his rights under the Sixth Amendment. More specifically, Petitioner claims that the sentencing court, by imposing a sentence under RCW 9.94A.507, elevated both the minimum and maximum terms of his standard sentencing range resulting in an unconstitutional sentence enhancement. Dkt. 4 at 6. Petitioner notes that the standard sentencing range for each count of rape of a child in the first degree was 209 to 277 months, and that the standard range for the count of child molestation in the first degree was 129 to 171 months. Dkt. 4 at 6; *see also* Dkt. 8, Ex. 1 at 4. At sentencing, the court imposed a minimum term of 277 months and a maximum term of life on each of the child rape counts, and a minimum term of 171 months and a maximum term of life on the child molestation count. Dkt. 8, Ex. 1 at 5-6. Petitioner maintains that because he was not charged with any enhancements under RCW 9.94A.507, because the jury didn't find any enhancements under the statute, and because he did not admit to any crime or sentencing enhancements, imposition of a sentence under RCW 9.94A.507 was constitutionally impermissible. *See* Dkt. 4 at 6.

REPORT AND RECOMMENDATION
PAGE - 6

Petitioner's first ground for relief is based on a line of cases that began with the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. Four years later the Supreme Court held in *Blakely v. Washington*, 542 U.S. 296 (2004), that "the 'statutory maximum' for *Apprendi* purposes is the maximum a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by defendant*." *Id*. at 303 (emphasis in original). Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that any fact increasing a mandatory minimum sentence was likewise an "element" of the crime that had to be submitted to the jury and found beyond a reasonable doubt. *Id*. at 103.

Petitioner presented his sentencing claim to the state courts on collateral review of his conviction, and both the Washington Court of Appeals and the Washington Supreme Court rejected the claim. The Washington Supreme Court, the last state court to consider the claim, explained its conclusion as follows:

> Mr. Rogers argues that his sentence violates principles requiring a jury to find any facts that increase the minimum or maximum penalty for a crime. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d [435 (2000)]; *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2152, 186 L. Ed. 2d 314 (2013). But the fundamental principle is that the trial court may impose no greater sentence than that allowed by the facts found by the jury or admitted by the defendant. *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Here, the jury verdicts of guilt alone combined with the sentencing statutes authorized the trial court to impose precisely the sentences it did: minimum terms within the standard range and maximum terms at the statutory maximums of life for the crimes of conviction. *See* RCW 9.94A.507(1), (3). These were not exceptional sentences that had to be supported by aggravating circumstances, as Mr. Rogers suggests, but sentences that flowed solely from the finding of guilty. And though the standard ranges depended on Mr. Rogers's criminal history, that history did not have to be found by the jury.

REPORT AND RECOMMENDATION
PAGE - 7

*State v. Weber*, 159 Wn.2d 252, 259-60, 149 P.3d 646 (2006).  The acting chief judge properly found no merit to Mr. Rogers's claim for relief.

Dkt. 8, Ex. 14.

Petitioner's reliance on the Supreme Court's decisions in the *Apprendi* line of cases is misplaced.  Though Petitioner argues in his petition that he received a sentence enhancement when he was sentenced in accordance with RCW 9.94A.507, that is simply not the case.  Once Petitioner was convicted of the crimes of rape of a child in the first degree and child molestation in the first degree, the sentencing court was required by statute to impose both a minimum and a maximum sentence.  *Se* RCW 9.94A.507(3)(a).  And pursuant to that statute, Petitioner was sentenced to a maximum term of life imprisonment on each of his offenses because each offense constituted a class A felony and was therefore subject to a statutory maximum sentence of life imprisonment.  *See* RCW 9.94A.507(3)(b), RCW 9A.44.073, RCW 9A.44.083, RCW 9A.20.021(1)(a).  Finally, in accordance with RCW 9.94A.507(3)(c)(i), Petitioner was sentenced to a minimum term within the standard sentence range for the offense.

As the Washington Supreme Court Commissioner correctly noted, Petitioner's sentence flowed solely from the guilty findings on the charged offenses and was not based on additional facts which were required to be found by the jury.  Petitioner fails to demonstrate that the conclusion of the state appellate courts contravenes clearly established United States Supreme Court precedent.  Accordingly, Petitioner's federal habeas petition should be denied with respect to his first ground for relief.

        2.      *Denial of Right to Impartial Jury*

Petitioner asserts in his second ground for relief that his right under the Sixth Amendment to trial by a fair and impartial jury was violated when the trial court failed to excuse a juror for

cause. Dkt. 4 at 6. At issue in this claim are statements made by juror 16 during voir dire while undergoing questioning by defense counsel. *See id*. at 7. Petitioner characterizes the juror's responses to counsel's questions as constituting "an unequivocal statement that he could not follow the presumption of innocence or hold the state to its burden of proof beyond a reasonable doubt." *Id*.

Trial by an impartial jury is fundamental to the fair administration of criminal justice. *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). An impartial jury is one that is composed of "jurors who will conscientiously apply the law and find the facts." *Lockhart v. McCree*, 470 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)). A juror is considered impartial under the Sixth Amendment standard if the juror can set aside any opinion he or she might hold and decide the case solely on the evidence presented at trial. *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *see also Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it.").

The burden rests on the defendant to prove a juror was biased resulting in the denial of the right to trial by an impartial jury. *See Witt*, 469 U.S. at 423 ("[I]t is the adversary seeking exclusion [of a juror] who must demonstrate, through questioning, that the potential juror lacks impartiality."). A state court's findings on juror impartiality are entitled to deference on federal habeas corpus review because juror impartiality is a question of fact. *Uttecht v. Brown*, 551 U.S. 1, 9-10 (2007); *Witt*, 469 U.S. at 428.

The Court of Appeals rejected Petitioner's juror bias claims on direct appeal, and explained its conclusion as follows:

REPORT AND RECOMMENDATION
PAGE - 9

Rogers argues he did not receive a fair trial due to juror bias. He contends the court failed to dismiss juror 16 sua sponte after the juror expressed actual bias. A court has broad discretion to consider all of the circumstances when deciding whether to dismiss a juror. We review a court's decision to seat or dismiss a juror for abuse of discretion.

The trial court has an independent statutory duty to dismiss a juror who has shown actual bias. A juror manifests actual bias when he "cannot try the issue impartially." Thus, merely equivocal answers do not require dismissal, and an expression of bias may be neutralized by further questioning.

In *State v. Gonzales*, this court required retrial after concluding the trial court failed to dismissed [sic] a biased juror. During voir dire, the State asked about the credibility of police officers, and the juror opined she could not disbelieve a police officer's testimony. The juror also said, "I don't know if I could" maintain a presumption of innocence for the defendant if a police officer testified to his guilt. Because the juror admitted a bias towards police officers, that her bias would harm her ability to deliberate, that her bias would undermine the presumption of innocence, and neither the court nor any party attempted to rehabilitate the juror, the court abused its discretion in seating her.

Rogers contends juror 16 expressed actual bias during defense counsel's portion of voir dire. Defense counsel posed a hypothetical and asked whether any juror's ability to render a verdict would change if the defendant declined to present a case. He and juror 16 had the following exchange:

> JUROR 16: Well, without strong exculpatory evidence on the defense part, the State has the scales tipped in their favor. There is just no way I could look at everything they present without a defense and judge otherwise.
>
> COUNSEL: Okay. Well, I appreciate the candor. I suspect that might be a preconceived notion that a lot of people come in with. I would like to remove the idea for a second that I—that we wouldn't present any kind of a case, and as I proposed to [juror] No. 15 here, look at all the evidence as a whole, but imagine a hypothetical where you had questions after that.
>
> JUROR 16: Sure, I would submit my questions to the judge
>
> COUNSEL: Okay
>
> JUROR 16: But, again, its heavily weighted toward the state.

> In other portions of voir dire, juror 16 was asked whether he could follow a court's instructions regarding the law, even if he thought the law was different. He explained, "If the crime meets the definition of what is set on paper is written as a law, that's what needs to be followed, not what I think it means." Juror 16 also expressed a bias against elected judges because they "always seem to want to throw the book at a defendant to appear tough on crime," but he "would do the best I could" to set those feelings aside. Juror 16 also said his mother had been sexually assaulted, but when asked by defense counsel if that "would make it very difficult or possible for you to be impartial," he responded, "No. No, not on that."
>
> Unlike the juror in *Gonzales*, he did not express an inability to remain impartial due to a bias against the defendant or toward the police. Juror 16 admitted a presentation of evidence by the State could sway him in [the] absence of a presentation by the defendant—a mere hypothetical when the court knew Rogers would be presenting a defense. Although juror 16 reiterated his bias after defense counsel clarified Rogers would mount a defense, it may have been clear to the court that juror 16 did not catch the clarification. The court also knew defense counsel declined to strike juror 16 and, given all of juror 16's responses, may not have wanted to undermine a legitimate tactical decision not to challenge him. Considered within the full context of voir dire and the trial, the court did not abuse its discretion by seating juror 16.

Dkt. 8, Ex. 2 at 10-13 (footnotes omitted).

While Petitioner argues that the trial court erred in failing to excuse juror 16, as Respondent correctly points out the United States Supreme Court has never held that a trial court has an obligation to dismiss jurors sua sponte for cause. *See Washington v. Thaler*, 714 F.3d 352, 354-55 (5th Cir.) cert. denied, 571 U.S. 957 (2013); *Cage v. McCaughtry*, 305 F.3d 625, 626-27 (7th Cir 2002). Here, as set forth in the Court of Appeals' opinion, defense counsel declined to strike juror 16. In the absence of any decision of the United States Supreme Court clearly supporting Petitioner's claim that the trial judge had an obligation to dismiss the juror sua sponte, the state court's adjudication of the claim cannot be deemed contrary to any clearly established federal law. *Brewer*, 378 F.3d at 955. Accordingly, Petitioner's federal habeas petition should be denied with respect to Petitioner's second ground for relief.

REPORT AND RECOMMENDATION
PAGE - 11

### C. Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to either of the claims asserted in his petition.

## VI. CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to both claims asserted in this federal habeas action. A proposed Order accompanies this Report and Recommendation.

## VII. OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed

within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 2, 2022**.

DATED this 9th day of November, 2022.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13